DANIEL G. BOGDEN
United States Attorney
District of Nevada
SARAH E. GRISWOLD
Assistant United States Attorney
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada  89101
 (702) 388-6336
Fax: (702) 388-6418

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
-oOo-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.:  2:14-cr-207-LDG-VCF |
| | ) | |
| Plaintiff, | ) | APPEAL FROM MAGISTRATE JUDGE'S |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| MICHAEL BLUMENTHAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by and through Daniel G. Bogden, United States Attorney, and Sarah E. Griswold, Assistant United States Attorney, appeals the order of the Magistrate Judge releasing the defendant MICHAEL BLUMENTHAL pending trial.  The Government submits that the evidence proves defendant should be detained as a risk of nonappearance.

The defendant led a multimillion dollar investment fraud that victimized hundreds of people.  He personally profited $4,000,000.  He lied to Pretrial Services about his employment and income in the hope of getting released.  He is facing a prison sentence of 14 or more years

after trial.  He has lived his entire life in Canada, his wife and two young children live in Canada, and returning to Canada requires little or no documentation.  The defendant has no reason to stay in this country and face the instant charges.  If he returns to Canada, extradition proceedings could take years.

## **PROCEDURAL BACKGROUND**

On June 17, 2014, a Grand Jury sitting in Las Vegas, Nevada issued a criminal indictment charging defendant MICHAEL BLUMENTHAL with Conspiracy To Commit Mail Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349; Mail Fraud, in violation of Title 18, United States Code, Section 1341; Wire Fraud, in violation of Title 18, United States Code, Section 1343; and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957. On June 23, 2014, the defendant made his initial appearance pursuant to Rule 5(c)(3) in the Northern District of New York. (N.D.N.Y. Case No. 8:14-mj-222-LAK, Doc. 3.).  On June 26, 2014, the defendant waived his right to a detention hearing in the Northern District of New York, and was remanded to the custody of the U.S. Marshal's Service.  (N.D.N.Y. Case No. 8:14-mj-222-LAK, Docs. 4, 5.).

The defendant made his initial appearance in the District of Nevada before United States Magistrate Judge Nancy J. Koppe on July 11, 2014.  (Doc. 8.)  At the defense's request, the detention was continued to July 15, 2014.  (*Id.*)  Magistrate Judge Carl W. Hoffman presided over the detention hearing at which the Government requested detention, and the defendant requested release with conditions.  The court set preliminary conditions of release, and continued the detention hearing to July 17, 2014, to allow the parties to collect information and to prepare paperwork to effectuate the court's conditions.  (Doc. 17.)  The hearing was subsequently continued to July 18, 2014 and July 21, 2014.  (Docs. 19, 20.)  At the conclusion

of the hearing on July 21, 2014, the magistrate court ordered release with conditions. (Doc. 21.) Those conditions include Pretrial Services supervision, residing in New Jersey, location motoring, and monetary bonds of $50,000 and $10,000 put up by family members. The court's order should be reversed.

## **LEGAL STANDARDS**

This Court reviews the magistrate court's order of release de novo, with no deference to the magistrate court's decision. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). Pursuant to Title 18, United States Code, Section 3142(e), the court shall order a defendant detained where no condition or combination of conditions will reasonably assure the defendant's appearance. The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9ht Cir. 1991). The judicial officer must consider the following factors in determining whether there are conditions of release that will reasonable assure a defendant's appearance as required:

 (1) The nature and circumstances of the offense charged . . . ;
 (2) The weight of the evidence against the person;
 (3) the history and characteristics of the person, including -
  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
  (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
 (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also United States v. Aitken*, 898 F.2d 104, 109 (9th Cir. 1990) ("Here, the district court ordered Aitken detained because he poses a flight risk. We agree. On one hand, Aitken is an American citizen, has no prior record, and has a job offer to work in Colorado. On the other hand, he has no ties to the State of Nevada, has lived for the past 16 years in Asia, and

has access to large sums of cash. The Government has shown, by a preponderance of the evidence, that appellant is a flight risk. We therefore denied appellant's motion for release pending trial. As indicated in our prior order, the district court's detention order is AFFIRMED.").

**ARGUMENT**

**1.     Defendant's Conduct Supports Detention**

Michael Blumenthal and his codefendant, Jay Kahane, solicited people to invest in companies to provide medical scanning service to hospitals that could not afford their own equipment.  Blumenthal and his coconspirators induced investors to part with money by making materially false and fraudulent statements to them, including but not limited to: (1) the qualifications and identities of participants in defendant's companies, and (2) that investors' money would be used to purchase portable imaging equipment that would be used at hospitals that could not afford their own imaging equipment, when defendant then and there well knew that he would not invest money in portable imaging equipment. (Doc. 1.)  Blumenthal owned and controlled multiple companies in which victims invested.  He concealed and attempted to conceal the fraudulent nature of his business by changing company names to make it more difficult for potential investors to find negative comments about his fraudulent investment scheme. (*Id.*)

The scheme the defendant oversaw was sophisticated.  His companies were incorporated in Nevada, and investors were directed to mail paperwork and checks to Nevada. The defendant, however, did not operate out of Nevada.  There was no office in Nevada. Paperwork and checks would be forwarded to the defendant outside of Nevada.

Approximately 300 people lost approximately $6,000,000 as a result of the defendant's and Kahane's investment fraud.   Of this, approximately $4,000,000 is directly attributable to

Blumenthal. The Government estimates that after trial, the defendant will be facing a Sentencing Guidelines range of at least 168-210 months of imprisonment.

The defendant lied to Pretrial Services about his employment history and income history for the time covered by the indictment. According to Pretrial Services' report in this case, the defendant told Pretrial Services that from 2006 to 2012 he worked as a salesperson making approximately $35,000 per year. This directly contradicts the evidence in this case, as well as the defendant's statements to law enforcement. On June 25, 2014, pursuant to a proffer agreement, the defendant told law enforcement that Mobile Diagnostic Centers ("MDC") was a company in his name and that he ran MDC's daily operations, that he hired doctors and a consultant for MDC. He said that others hired the telemarketers for MDC, and that he rarely spoke with investors on the telephone. He said he spoke with investors when they had complaints or when he gave them updates.

In the proffer, Blumenthal estimated that he received approximately $3,000,000 in investor money, and that $2,500,000 of this was spent on company expenses. He said that he kept only $100,000 for himself. Evidence compiled during the course of the investigation in this case shows that Blumenthal received approximately $4,000,000 in investor money.

**2.     The Defendant's History and Characteristics Support Detention**

The defendant is a dual citizen of Canada and the United States. According to the Pretrial Services report, the defendant was born in Montreal, and has lived in that area his entire life. This would include the years during which he directed the fraud scheme charged in this case. It does not appear that Pretrial Services was able to run the defendant's criminal history in Canada or to obtain information about any appearances at court proceedings in Canada.

The defendant has two young children and a wife in Montreal. After trial, he will be facing a Guidelines range of 168-210 months in prison if he has no criminal history. He has no

reason to stay in this country and face these charges.

The magistrate court ordered the defendant to surrender his passports and not to obtain new travel documents. The Government believes the defendant has both United States and Canadian passports. This condition, however, is no bar to the defendant returning to Canada. Canada allows its citizens to return with as little as a citizenship card, or with a government-issued identification and birth certificate. According to FBI Special Agent Kevin White, an ICE employee has informed him that Canada also allows its citizens to drive back into Canada without any such paperwork.

An extradition waiver would not alleviate the defendant's risk of non-appearance. The magistrate court also initially considered requiring the defendant to sign an extradition waiver to facilitate the defendant's return to this country if he flees. Because such a waiver is not enforceable in Canada, the court declined to require such a waiver. A letter from Canada's Department of Justice explains that "a waiver or consent to extradition entered into before a foreign [i.e., United States] court would not satisfy the requirements of the Extradition Act, which requires a fresh consent or waiver before an extradition judge after extradition proceedings have been commenced." (Ex. 1.) Thus, if the defendant flees to Canada and does not voluntarily return to the United States, the Government would have to commence extradition proceedings. A trial attorney from the United States Department of Justice's Office of International Affairs has informed the undersigned that extradition from Canada is difficult and slow, utilizes a lot of resources, and can take three or more years.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

The evidence shows that no condition or combination of conditions can be fashioned to reasonably assure the defendant's appearance in court. The United States respectfully asks this Court to reverse the magistrate court's order releasing the defendant pending trial. For all of the reasons above, the United States asks this Court to order the defendant detained, pending trial, as a risk of nonappearance.

DATED this 21st day of July, 2014.

DANIEL G. BOGDEN
United States Attorney


/s/ Sarah E. Griswold
SARAH E. GRISWOLD
Assistant United States Attorney

**CERTIFICATE OF ELECTRONIC SERVICE**

This is to certify that the undersigned has served the foregoing APPEAL FROM MAGISTRATE JUDGE'S ORDER on counsel of record by means of electronic filing.

DATED this 21st day of July, 2014.

                                           /s/ Sarah E. Griswold
                                           Sarah E. Griswold